1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9               **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    ALBERT DUBOIS,                              No. 2:13-cv-1708-MCE-CMK-P

12                    Plaintiff,

13           vs.                                  <u>FINDINGS AND RECOMMENDATION</u>

14    WINN,

15                    Defendant.

16    _____/

17           Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42

18    U.S.C. § 1983.  Pending before the court is defendants' unopposed motion for summary

19    judgment (Doc. 23).

20                              **I.  BACKGROUND**

21           This case proceeds on plaintiff's original complaint (Doc. 1). The court previously

22    summarized plaintiff's complaint as alleging defendant Winn denied plaintiff necessary medical

23    treatment in violation of his Eighth Amendment rights.  Specifically, plaintiff claims after he fell,

24    defendant Winn gave him pain medication and required he return to his cell without providing

25    any diagnostic evaluation such as an x-ray to determine his injuries.

26    / / /

1    Defendants now bring a motion for summary judgment for plaintiff's failure to

2  properly exhaust his administrative remedies, and alternatively, that plaintiff has no evidence to

3  support any of his claims.  Plaintiff has not filed an opposition.

4    **II.  STANDARD FOR SUMMARY JUDGMENT**

5    The Federal Rules of Civil Procedure provide for summary judgment or summary

6  adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file,

7  together with affidavits, if any, show that there is no genuine issue as to any material fact and that

8  the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  The

9  standard for summary judgment and summary adjudication is the same.  See Fed. R. Civ. P.

10 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).  One

11 of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.

12 See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the

13 moving party

14    always bears the initial responsibility of informing the district court of the
         basis for its motion, and identifying those portions of "the pleadings,
15       depositions, answers to interrogatories, and admissions on file, together
         with the affidavits, if any," which it believes demonstrate the absence of a
16       genuine issue of material fact.

17 Id. at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

18    If the moving party meets its initial responsibility, the burden then shifts to the

19 opposing party to establish that a genuine issue as to any material fact actually does exist.  See

20 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

21 establish the existence of this factual dispute, the opposing party may not rely upon the

22 allegations or denials of its pleadings but is required to tender evidence of specific facts in the

23 form of affidavits, and/or admissible discovery material, in support of its contention that the

24 dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The

25 opposing party must demonstrate that the fact in contention is material, i.e., a fact that might

26 affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S.

1  242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630

2  (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury

3  could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433,

4  1436 (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more

5  than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the

6  record taken as a whole could not lead a rational trier of fact to find for the non-moving party,

7  there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is

8  sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the

9  parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

10      In resolving the summary judgment motion, the court examines the pleadings,

11  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

12  any.  See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see

13  Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed

14  before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.

15  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

16  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

17  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

18  1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for

19  the judge, not whether there is literally no evidence, but whether there is any upon which a jury

20  could properly proceed to find a verdict for the party producing it, upon whom the onus of proof

21  is imposed."  Anderson, 477 U.S. at 251.

22                                    **III.  DISCUSSION**

23  **A.      Failure to Exhaust**

24      Defendant argues plaintiff failed to submit his 602 inmate appeal to the third level

25  in order to exhaust his administrative remedies.  As he failed to fully exhaust his inmate appeal,

26  defendant contends he is entitled to judgment as a matter of law.  Plaintiff has not filed any

1    opposition to the motion.

2            The Prison Litigation Reform Act (PLRA) sates, "No action shall be brought with

3    respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner

4    confined in any jail, prison, or other correctional facility until such administrative remedies as are

5    available are exhausted." 42 U.S.C. § 1997e(a).  Therefore, prisoners are required to exhaust all

6    available administrative remedies prior to filing suit.  Jones v. Bock, 549 U.S. 199, 211 (2007).

7            In order to exhaust administrative remedies, the prisoner must comply with all of

8    the prison system's procedural rules so that the agency addresses the issues on the merits.  See

9    Woodford v. Ngo, 548 U.S. 81, 89-96 (2006).  Thus, exhaustion requires compliance with

10   "deadlines and other critical procedural rules."  Id. at 90.  Partial compliance is not enough.  See

11   id.  Substantively, the prisoner must submit a grievance which affords prison officials a full and

12   fair opportunity to address the prisoner's claims.  See id. at 90, 93.  The Supreme Court noted

13   that one of the results of proper exhaustion is to reduce the quantity of prisoner suits "because

14   some prisoners are successful in the administrative process, and others are persuaded by the

15   proceedings not to file an action in federal court."  Id. at 94.

16           In California, prisoners may appeal "any policy, decision, action, condition, or

17   omission by the department or its staff that the inmate or parolee can demonstrate as having a

18   material adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, §

19   3084.1(a).  On January 28, 2011, California prison regulations governing inmate grievances were

20   revised.  Cal. Code Regs. tit. 15, § 3084.7.  Now inmates in California proceed through three

21   levels of appeal to exhaust the appeal process: (1) formal written appeal on a CDC 602 inmate

22   appeal form, (2) second level appeal to the institution head or designee, and (3) third level appeal

23   to the Director of the California Department of Corrections and Rehabilitation ("CDCR").  Cal.

24   Code Regs. tit. 15, § 3084.7.  Under specific circumstances, the first level review may be

25   bypassed.  Id.  The third level of review constitutes the decision of the Secretary of the CDCR

26   and exhausts a prisoner's administrative remedies. See id. § 3084.7(d)(3).  A California prisoner

4

is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him.  Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).  Since the 2011 revision, in submitting a grievance, an inmate is required to "list all staff members involved and shall describe their involvement in the issue."  Cal. Code Regs. tit. 15, § 3084.2(3).  Further, the inmate must "state all facts known and available to him/her regarding the issue being appealed at the time," and he or she must "describe the specific issue under appeal and the relief requested." Cal. Code Regs. tit. 15, §§ 3084.2(a)(4). An inmate now has thirty calendar days to submit his or her appeal from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed."  Cal. Code Regs. tit. 15, § 3084.8(b).

Where a prison system's grievance procedures do not specify the requisite level of detail for inmate appeals, a grievance satisfies the administrative exhaustion requirement if it "alerts the prison to the nature of the wrong for which redress is sought."  Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009); see Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010). "A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved.  A grievance also need not contain every fact necessary to prove each element of an eventual legal claim.  The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation."  Griffin, 557 F.3d at 1120.

The Ninth Circuit has determined that a motion for summary judgment is the proper means to raise a prisoner's failure to exhaust administrative remedies.  See Albino v. Baca, 747 F.3d 1162, 1166 (9th cir. 2014).  Defendants have the burden of providing plaintiff failed to exhaust available administrative remedies.  See id.  A defendant's burden of establishing an inmate's failure to exhaust administrative remedies has been characterized by the Ninth circuit as "very low."  Albino v. Baca, 697 F.3d 1023, 1031 (9th Cir. 2012).  The "defendant need only show the existence of . . . [a grievance procedure] that the plaintiff did not use."  Id. (citing Hilao

5

v. Estate of Marcos, 103 F.3d 767, 778, n.5 (9th Cir. 1996)).  "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56."  Albino, 747 F.3d at 1166.  If material facts are disputed, summary judgment should be denied, and the district court should decide "disputed factual questions relevant to exhaustion . . . in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue."  Id. at 1170-71.

### 1.  Plaintiff's 602 Appeal

Here, as set forth above, plaintiff claims Dr. Winn failed to provide adequate medical care to treat his injuries after a fall.  Plaintiff states in his complaint that he did not exhaust his administrative remedies through no fault of his own.  He contends that he submitted his appeal to the Third Level of Review, but never received a final disposition of the appeal.  Plaintiff attached to his complaint a copy of two related inmate appeals.  Appeal number SOL HC 12036660 was screened out several times for plaintiff's failure to submit the proper form and to submit supporting documentation.  Appeal number SOL SC 12000340 was processed as a staff complaint, and was partially granted at the second level in that an inquiry was made into plaintiff's allegations of misconduct.  The reviewer at the second level did find that staff violated CDCR policy, but because it was a staff complaint, the exact findings were not disclosed as being confidential.  These inmate appeals are attached as exhibits to the complaint as well as provided by defendant in the motion for summary judgment.

### 2.  Analysis

As sets forth above, the regulations require prisoners comply with the procedural rules in order to properly exhaust their administrative remedies.  The regulations require inmates to appeal to the highest level of review, the Third Level, before the appeal will be considered fully exhausted.

The undisputed evidence supports defendant's contention.  In addition to copies of the appeals, defendant also provides a declaration from the custodian of records for inmate

1    appeals, Santos Cervantes.  The custodian declares that no third level appeal regarding plaintiff's

2    allegations against Dr. Winn was ever submitted, and provides the appeals logs for the inmate

3    appeals plaintiff has submitted.  While plaintiff alleges in his complaint that he attempted to

4    submit his third level appeal, and even provided copies of letters to the Governor requesting

5    information as to the status, the information provided is insufficient to show he exhausted his

6    administrative remedies.  The first appeal plaintiff provides, number SOL HC 12036660 was

7    screened out, and no final determination was ever made.  As set forth above, plaintiff is required

8    to comply with all of the prison system's procedural rules.  As to this first appeal, plaintiff failed

9    to do so, resulting in his appeal being screened out.  As to the second appeal, SOL SC 12000340,

10   the second level review indicates a partial grant, in that an inquiry was made, and provides that if

11   plaintiff is still unsatisfied he could appeal to the third level.  There is no record that plaintiff

12   ever did so.

13            Plaintiff does contend in his complaint that he submitted a third level appeal, and

14   never received a response.  However, the letters he provides in the complaint to support that

15   contention relate to appeal number SOL HC 12036660, which had been screened out and not

16   reviewed.  The only appeal that had been accepted for review was number SOL HC 12000340.

17   There is no information in the complaint that this is the appeal plaintiff alleges he submitted for

18   third level review.  Further, as he did not file an opposition to the motion for summary judgment,

19   he provides no further information as to either of these two different appeals.

20            Defendant has met his initial burden of showing plaintiff failed to properly

21   exhaust his administrative remedies.  The burden then shifts to plaintiff to produce some

22   evidence that he did in fact exhaust his administrative remedies or that there was some particular

23   burden in his way of exhausting his administrative remedies which would effetely make such

24   remedies unavailable to him.  As plaintiff failed to file an opposition to the motion, he fails to

25   make such a showing and meet his burden.  The limited allegations set forth in the complaint are

26   insufficient.  Accordingly, the undersigned finds defendant has met his burden to show plaintiff

1  failed to exhaust his administrative remedies.

2  **B.  Insufficient Evidence**

3           Alternatively, defendant moves for summary judgment on the basis that plaintiff

4  cannot support his claims that Dr. Winn acted with the necessary deliberate indifference to

5  violate plaintiff's Eighth Amendment rights.

6           The treatment a prisoner receives in prison and the conditions under which the

7  prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel

8  and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan,

9  511 U.S. 825, 832 (1994).  The Eighth Amendment "embodies broad and idealistic concepts of

10  dignity, civilized standards, humanity, and decency."  Estelle v. Gamble, 429 U.S. 97, 102

11  (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v.

12  Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with

13  "food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy,

14  801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only

15  when two requirements are met: (1) objectively, the official's act or omission must be so serious

16  such that it results in the denial of the minimal civilized measure of life's necessities; and (2)

17  subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of

18  inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison

19  official must have a "sufficiently culpable mind."  See id.

20           Deliberate indifference to a prisoner's serious illness or injury, or risks of serious

21  injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at

22  105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental

23  health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is

24  sufficiently serious if the failure to treat a prisoner's condition could result in further significant

25  injury or the "unnecessary and wanton infliction of pain."  McGuckin v. Smith, 974 F.2d 1050,

26  1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).

Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain.  See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns.  See McGuckin, 974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989).  The complete denial of medical attention may constitute deliberate indifference.  See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference.  See Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim.  See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

**1. Plaintiff's Allegations**

In his complaint, plaintiff alleges that after stepping in a puddle of soap, he fell in the restroom.  Medical was called, and upon arrival the nurse determined he had suffered a back and possible neck injury.  Plaintiff was placed in a neck brace and back board for transport to the clinic.  At the clinic, medical personnel informed Dr. Winn that plaintiff would need x-rays.  Dr. Winn told them not to do anything until he was done eating lunch.  Over an hour later, Dr. Winn examined plaintiff.  Plaintiff informed Dr. Winn that he was experiencing extreme pain in his

1  neck and back.  Dr. Winn prescribed a shot for the pain, and told plaintiff to return to his housing

2  unit.  Plaintiff informed Dr. Winn he could not walk without his cane, that he was classified as an

3  American with a disability.  Dr. Winn gave him an order to walk back on his own.  As plaintiff

4  was walking, he fell again, but no one was there to help him.  When he finally made it back to

5  housing unit, another inmate assisted him.  At his follow up visit, Dr. Martinez documented

6  plaintiff's injuries, indicating left lower extremity (sciatica) numbness.

### 2. Defendant's Undisputed Evidence

8          In support of his motion for summary judgment, defendant submits his

9  declaration, copies of plaintiff's medical records, and plaintiff's deposition.  As plaintiff did not

10  file an opposition to the motion, this evidence remains undisputed.  As part of this undisputed

11  evidence, defendant's declaration and plaintiff's medical records show that defendant was the on-

12  call physician at the time of plaintiff's incident.  Once receiving the call, defendant arrived at the

13  prison from home within the hour provided by prison policy.  It is common practice for medical

14  personnel to place a patient who has fallen in a cervical collar and on a back board for

15  transportation.  Upon his arrival, defendant examined plaintiff and based on plaintiff's

16  explanation and examination, determined plaintiff suffered from soft-tissue damage which did

17  not require further diagnostic measures. Defendant prescribed pain medication, muscle relaxant,

18  and ice, and for plaintiff to follow up with his primary care physician a few weeks later.  Plaintiff

19  was then released back to his yard without transport as defendant determined plaintiff appeared

20  functional and his symptoms were mild.  Defendant declares he has no recollection of plaintiff

21  informing him he was unable to walk back to the yard, nor did defendant make note of such in

22  the medical records as he would have done.  If plaintiff had informed defendant that he was not

23  able to walk back and refused to leave, medical staff could not have forced him to leave.  Nor

24  does defendant recall plaintiff requesting use of his cane or informing defendant that he was an

25  ADA patient.  Further, plaintiff's follow up treatment was consistent with defendant's evaluation

26  and treatment.  While x-rays were ordered by plaintiff's primary care physician, the x-rays

1   showed only mild degenerative changes in the C-5 and C-6 area, but no fractures to the neck.

2       **3. Analysis**

3               As set forth above, in order for a prison official to have violated a prisoner's

4   Eighth Amendment rights, the prisoner must show that the official's action was objectively so

5   serious as to be a denial of the minimal civilized measure of life's necessities, and subjectively,

6   the official must have acted with the purpose of inflicting harm.  As to the first, it is significant

7   that defendant has submitted undisputed evidence that he provided treatment to plaintiff, and this

8   treatment was consistent with the follow up treatment plaintiff received, namely both doctors

9   prescribed the same pain medication.  Plaintiff does not, and cannot, claim that defendant failed

10  to provide medical treatment.  At best, given the undisputed evidence before the court, plaintiff's

11  allegations amount to a disagreement as to the medical treatment provided.  Such disagreement is

12  insufficient to show deliberate indifference.  As to the second, defendant's declaration clearly

13  shows that he treated plaintiff as he thought best.  There is no evidence before the court that

14  defendant acted in any way with the purpose of causing plaintiff any harm, or callously

15  disregarding plaintiff's complaints.  Rather, he provided the treatment he thought plaintiff's

16  symptoms called for.

17              As for plaintiff's allegations regarding being forced to walk back to his housing

18  unit unassisted, again the undisputed evidence before the court shows that defendant was

19  unaware of plaintiff's disabilities as he was not plaintiff's treating physician.  Defendant submits

20  his declaration that states had he been made aware, he would have reevaluated plaintiff's ability

21  to ambulate on his own.  However, plaintiff did not inform defendant that he was unable to walk

22  on his own without his cane.  The undisputed evidence shows defendant did not have the

23  subjective state of mind required to violate plaintiff's Eighth Amendment rights.

24              Again, defendant has met his initial burden of showing no genuine issue as to any

25  material fact actually exist to support the contention that defendant was deliberately indifferent to

26  plaintiff's medical needs.  The burden then shifts to plaintiff to produce some evidence that the

1  defendant did in fact act unreasonably and with the necessary intent to violate his Eighth

2  Amendment rights.  As plaintiff failed to file an opposition to the motion, he fails to make such a

3  showing and meet his burden.  Accordingly, the undersigned finds defendant has met his burden

4  to show there is no evidence that he acted with deliberate indifference to plaintiff's medical

5  needs.

6  ## IV.  CONCLUSION

7    The undersigned finds no genuine issue as to any material fact.  Given the

8  undisputed evidence, and plaintiff's lack of opposition to the motion for summary judgment, it

9  stands that plaintiff failed to properly exhaust his administrative remedies prior to bringing this

10  action, and in the alternative, that defendant did not act with deliberate indifference to plaintiff's

11  medical needs.  Thus, defendant's motion for summary judgment should be granted.

12    Based on the foregoing, the undersigned recommends that:

13    1. Defendant's motion for summary judgment (Doc. 23) be granted; and

14    2. The Clerk of the Court be directed to enter judgment and close this case.

15    These findings and recommendations are submitted to the United States District

16  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

17  after being served with these findings and recommendations, any party may file written

18  objections with the court.  Responses to objections shall be filed within 14 days after service of

19  objections.  Failure to file objections within the specified time may waive the right to appeal.

20  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

21

22  DATED:  March 30, 2016

23

24  **CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE

25

26

12